**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORNEL BRISCO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7233 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| VINCENT STINAR, | ) | |
| LENNY PIERRI, and | ) | |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On the night of September 22, 2009, Chicago Police Officers Vincent Stinar and Lenny Pierri arrested Cornel Brisco in a basement apartment in the North Austin neighborhood. Brisco was later charged with six counts of unlawful gun possession. He pled not guilty.

At trial, Brisco testified that he was peacefully sleeping in a friend's apartment when he received a rude awakening. Two officers entered the apartment, shook him awake, and arrested him. Officer Stinar gave a completely different account. He testified that he was on patrol with Officer Pierri when they observed Brisco robbing a man with a rifle. When Brisco spotted them, he fled, dropping the rifle and running into the basement of a nearby building where the officers found him hiding.

After a bench trial, the state court found Brisco guilty. The conviction was affirmed on appeal. He served six years in prison. Then, in 2018, the trial court vacated his sentence after the Illinois Supreme Court found the gun possession statute unconstitutional. So Brisco served six years for violating an unconstitutional statute.

Brisco later brought claims against the two officers under section 1983, alleging that he was framed. He claims that they violated his Fourteenth Amendment right to due process by knowingly giving a false account of what happened on the night of the arrest.

The officers moved to dismiss Brisco's complaint for failure to state a claim, for three reasons. First, Defendants argue that they are entitled to qualified immunity. Second, they contend that the doctrine of collateral estoppel bars Brisco from re-litigating the facts about his arrest. And finally, they argue that Brisco's complaint is implausible because he doesn't allege any facts suggesting that the officers actually *knew* that some part of their account was false.

The motion is denied.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Officers Vincent Stinar and Lenny Pierri arrested Cornel Brisco after midnight on September 22, 2009. *See* Cplt., at ¶¶ 8, 10, 13 (Dckt. No. 1); 5/3/10 Trial Tr., Defs.' Mtn. to Dismiss, Ex. 2 (Dckt. No. 16-2). After the arrest, the parties gave completely different accounts of what happened. *Id*. Brisco was either sleeping peacefully or violently robbing someone.

Brisco alleges that he was sound asleep in a friend's apartment. And then out of the blue, two officers suddenly barged in and shook him awake. *See* Cplt., at ¶¶ 8, 12. They shoved him to the ground, kicked him, and placed him in handcuffs. *Id*. at ¶¶ 12, 13.

The officers told a much different story. Officers Stinar and Pierri alleged that they were on patrol when they spotted Brisco at the entrance of an alley, robbing a man on a bicycle. *Id.* at ¶ 14 (summarizing the police report); *People v. Brisco*, 2012 IL App (1st) 101612, at ¶ 6, 361 Ill. Dec. 365, 971 N.E.2d 20 (2012). When Brisco saw the officers, he took off, running into a nearby building. *Brisco*, 2012 IL App (1st) 101612, at ¶ 7. The officers pursued Brisco and saw him drop a rifle as he ran through the building. *Id.* The chase continued until they eventually found him hiding in the basement behind a stack of boxes. *Id.* They placed him under arrest. *Id.*

In the following days, the officers repeated their version of events a number of times. They filed a police report. *See* Cplt., at ¶ 14 (Dckt. No. 1). They spoke to the state's attorney. *Id.* at ¶ 17. Officer Stinar, with the agreement of Officer Pierri, filed a complaint accusing Brisco of unlawful gun possession. *Id.* at ¶ 15.

Two weeks later, Brisco was formally charged with six counts of unlawful gun possession: four counts of Aggravated Unlawful Use of a Weapon ("Aggravated Unlawful Use") in violation of 720 ILCS 5/24-1.6(a)(1), and two counts of Unlawful Use of a Weapon by a Felon ("Unlawful Use") in violation of 720 ILCS 5/24-1.1(a). *See Brisco*, 2012 IL App (1st) 101612, at ¶ 1. He pled not guilty to all six counts. *See* Certified Statement of Conviction / Disposition, Defs.' Mtn. to Dismiss, Ex. 1, at 5 (Dckt. No. 16-1, at 6 of 17).

On May 3, 2010, the state court held a bench trial. *See* Certified Statement of Conviction / Disposition, Defs.' Mtn. to Dismiss, Ex. 1, at 5 (Dckt. No. 16-1, at 6 of 17); *see generally* 5/3/10 Trial Tr., Defs.' Mtn. to Dismiss, Ex. 2 (Dckt. No. 16-2). Officer Stinar testified for the state. *See* 5/3/10 Trial Tr., Defs.' Mtn. to Dismiss, Ex. 2 (Dckt. No. 16-2). Brisco took the stand, too. *Id.*

Brisco testified that he was asleep at a friend's home when the officers barged in and arrested him. *Id.* at 21:17 – 29:19; *see also id.* at 22:18-21, 26:4-10 (testifying that he didn't know his friend's last name, despite knowing him for two years).

Officer Stinar testified that he saw Brisco robbing a man on a bike while holding a rifle. *Id.* at 5:24 – 19:21. Brisco fled when he saw the police. *Id.* But Officer Stinar chased him down, finding Brisco hiding behind some boxes in the basement of a nearby apartment building. *Id.* He then placed Brisco under arrest. *Id.*

The court found Brisco guilty of all six counts of gun possession. *Id.* at 33:15-20. Brisco received a sentence of 11 years in prison for one count of Aggravated Unlawful Use. *See Brisco*, 2012 IL App (1st) 101612, at ¶ 1. Importantly, the court did not impose a sentence for the remaining five counts.[1]

Brisco appealed, and the Illinois Appellate Court upheld his conviction, but remanded for new post-trial proceedings. *See* Cplt., at ¶ 20 (Dckt. No. 1); *Brisco*, 2012 IL App (1st) 101612, at ¶ 1. On remand, the court re-sentenced Brisco to seven years in prison for one count of Aggravated Unlawful Use.[2] *See* Cplt., at ¶ 21. Brisco did not appeal his conviction to the

---

[1] The record is silent about why Brisco was sentenced on only one of the six counts. However, the Court assumes that it had something to do with the Illinois "one-act, one-crime" doctrine. *See People v. Artis*, 232 Ill. 2d 156, 170, 902 N.E.2d 677 (2009). Under that rule, a single act by the defendant can result in only one conviction. *Id.* Therefore, when a court finds that a single act results in liability under a variety of statutes, the court must only convict and sentence the defendant with respect to the single "most serious offense." *Id.* at 170 (citing *People v. Lee,* 213 Ill. 2d 218, 226–27, 290 Ill. Dec. 256, 821 N.E.2d 307 (2004)). The less serious offenses "should be vacated." *Id.* In Brisco's case, a single act – possessing a rifle – resulted in six guilty verdicts. *See* 5/3/10 Trial Tr., Defs.' Mtn. to Dismiss, Ex. 2 (Dckt. No. 16-2, at 34 of 35). Therefore, under the "one-act, one-crime" doctrine, Brisco could be sentenced on only one count of the most serious charge, Aggravated Unlawful Use. *See People v. Owens*, 2019 IL App (1st) 161356-U, at ¶ 19 (explaining that where a defendant had been found guilty of both Aggravated Unlawful Use and Unlawful Use as a result of the same act of possession, the defendant was only sentenced for Aggravated Unlawful Use).

[2] The state court did not address the other five counts, except to say (incorrectly) that they were "previously nollied." *See* 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 3:6-17 (Dckt. No. 16-3). Ordinarily, those charges would be deemed *nolle prosequi,* a formal designation indicating that the state does not intend to continue prosecuting them. *See, e.g.*, *People v. Artis*, 232 Ill. 2d 156, 170, 902 N.E.2d

Illinois Supreme Court. So by all appearances, it looked like he had hit the end of the line. *See* Defs.' Mtn. to Dismiss, Ex. 1, at 10 (Dckt. No. 16-1).

The legal landscape changed in 2013. The Illinois Supreme Court held that the applicable section of the Aggravated Unlawful Use statute violated the Second Amendment. *See People v. Aguilar*, 2013 IL 112116, 377 Ill. Dec. 405, 2 N.E.3d 321 (2013); *see also* Cplt., at ¶ 22 (Dckt. No. 1).

Brisco later filed a petition to vacate his conviction under the Illinois Post-Conviction Hearing Act. *See* Cplt., at ¶ 22 (Dckt. No. 1); Defs.' Supplemental Brief, at 4 (Dckt. No. 32). The Post-Conviction Hearing Act allows anyone currently detained to challenge their conviction by asserting that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States." 735 ILCS 5/122-1.

The trial court held a hearing on his petition on January 9, 2018. *See* Cplt., at ¶ 22 (Dckt. No. 1); 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 3:8-17, 4:12 – 5:2 (Dckt. No. 16-3). The court vacated his conviction for Aggravated Unlawful Use. *See* 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 5:3-4. The court also deemed the other five counts – for which he had been *convicted*, but not *sentenced – nolle prosequi*.[3] *Id.*; *see also* Certified Statement of Conviction / Disposition, Defs.' Mtn. to Dismiss, Ex. 1, at 15 (Dckt. No. 16-1, at 16 of 17) (listing "NOLLE PROSEQUI" as the disposition for all six counts as of January 9, 2018).

___

677 (2009). During the hearing on Brisco's post-conviction relief petition, the government characterized the court's failure to deem the remaining five charges *nolle prosequi* as inadvertent error. *See* 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 3:8-13 (Dckt. No. 16-3).
[3] "A *nolle prosequi* is the formal entry of record of a prosecuting attorney of his or her unwillingness to prosecute a case." *People v. Artis*, 232 Ill. 2d 156, 169, 902 N.E.2d 677 (2009).

The government floated the idea of reinstating the two counts of Unlawful Use. *See* 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 3:8-17, 4:7 – 5:2 (Dckt. No. 16-3). However, the court expressed skepticism about the need for Brisco to serve more time in prison, so the prosecution dropped the idea. *Id*. at 3:16-17, 4:21 – 5:4, 5:12-16.

The judge concluded the hearing by turning to Brisco and stating: "The charges against you are all dismissed. The conviction is vacated. The case is over with." *Id*. at 5:14-16.

The criminal case was over, but this civil case was just getting started. Less than two years later, on November 1, 2019, Brisco filed a complaint against the two officers and the City of Chicago. Brisco alleged that Officers Stinar and Pierri violated his right to due process under the Fourteenth Amendment by fabricating evidence that led to his conviction and imprisonment. *See generally* Cplt. (Dckt. No. 1).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). When reviewing the complaint itself, the court "accept[s] the well-pleaded facts in the complaint as true," but ignores "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009)).

In this case, the Court takes judicial notice of a collection of materials from Brisco's criminal case. Specifically, the Court takes judicial notice of (1) the transcript of Brisco's original criminal trial; (2) the transcript of the hearing on Brisco's petition to vacate his conviction; (3) a certified statement of Brisco's "conviction/disposition" from the Circuit Court of Cook County; and (4) the opinion issued by the Illinois Court of Appeals when it affirmed his conviction. *See* Defs.' Mtn. to Dismiss, Exs. 1–3 (Dckt. No. 16); *Brisco*, 2012 IL App (1st) 101612. They are official court records, and there is no reason to doubt their accuracy (meaning that they accurately reflect what transpired).[4] All parties rely on them, too. *See* Defs.' Mtn. to Dismiss, Exs. 1–3 (Dckt. No. 16); Pls.' Resp. to Defs.' Mtn. to Dismiss, at 2, 3, 12 (Dckt. No. 20). They're important for the collateral estoppel argument.

Defendants request that the Court also take judicial notice of the underlying factual findings in one of those documents: the opinion issued by the Illinois Court of Appeals affirming Brisco's conviction. *See* Defs.' Mtn. to Dismiss, at 5 (Dckt. No. 16). That is, they ask the Court to treat the factual findings of the Appellate Court as objectively true facts about the world. *Id.* The Court declines to do so. Brisco's criminal judgment was vacated. And as discussed below, when a judgment is vacated, the factual findings underlying that judgment are vacated, too. *See, e.g.*, *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 854–55 (7th Cir. 1974) (holding that the facts underlying a vacated judgment are "a nullity"); *see also Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (holding that when a judgment is vacated, it "technically

---

[4] Under Federal Rule of Evidence 201(b), a court can take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201. It is "well settled" that a court may take notice of "court records as evidence of prior judicial actions." *United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020); *United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020) (taking judicial notice of defendant's state court record of conviction, and citing cases taking judicial notice of state-court trial records, and state court conviction records).

leav[es] nothing" behind).  After vacatur of a judgment, nothing remains.  There are no remaining factual findings to take judicial notice of.

**Discussion**

Defendants moved to dismiss Brisco's complaint under Rule 12(b)(6) on three grounds: qualified immunity, collateral estoppel, and facial implausibility.  *See generally* Defs.' Mtn. to Dismiss (Dckt. No. 16).  The Court will address each in turn.

## I.      Qualified Immunity

Defendants first argue that Officers Stinar and Pierri are entitled to qualified immunity.  *See* Defs.' Mtn. to Dismiss, at 10–11 (Dckt. No. 16); Defs.' Reply in Support of Their Mtn. to Dismiss, at 6 (Dckt. No. 28).

To evaluate a claim of qualified immunity, courts engage in a two-step analysis.  *See Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).  The first step is to "determine whether the plaintiffs' claim states a violation of their constitutional rights."  *Id*.  The second step is to "determine whether those rights were clearly established at the time the violation occurred."  *Id*.  If the rights were clearly established, "then the official may be liable for monetary damages and the suit proceeds to the next stage."  *Id*.  However, if the rights were not clearly established, "then the official is immune from suit and the claim is dismissed."  *Id*.

A plaintiff has the burden to demonstrate that a constitutional right is clearly established.  *Id*.  A right is clearly established if ''[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.''  *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Because this requirement centers on what the officer knew or should have known at the time, the court must look at the state of the law "during the time period alleged in the complaints."  *Reed v. Palmer*, 906 F.3d 540, 549–51 (7th Cir.

8

2018). Courts look "first to controlling Supreme Court precedent and our own circuit decisions on the issue." *Jacobs*, 215 F.3d at 767.

Step one in this case is straightforward. Brisco plainly alleges a violation of his constitutional rights. He alleges that both officers "deprived Cornel Brisco of his due process rights under the fourteenth amendment [sic] to the Constitution of the United States by fabricating evidence against him." *See* Cplt., at ¶¶ 25, 27 (Dckt. No. 1).

That leaves step two, whether the right was clearly established at the time. By September 22, 2009, the Seventh Circuit had made clear that the Fourteenth Amendment prohibits the police from fabricating evidence in a criminal proceeding. For example, more than three decades ago, the Seventh Circuit held that "a police officer who deliberately supplied misleading information" violates a defendant's Fourteenth Amendment rights. *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). A year before Brisco's arrest, the Seventh Circuit held that there was "no disputing" that when a police officer fabricates evidence against a defendant, "such conduct violates clearly established constitutional rights." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). Other Seventh Circuit cases have recognized that a police officer cannot fabricate evidence. *See, e.g.*, *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way.") (citing cases before 2009).

The officers argue that they are entitled to qualified immunity because "[p]laintiff was arrested September 22, 2009 – nearly four years before the Illinois Supreme Court declared the Aggravated Unlawful Use statute was unconstitutional at the time of Plaintiff's arrest." *See* Defs.' Mtn. to Dismiss, at 11 (Dckt. No. 16). But Brisco isn't alleging that the officers violated

his rights by arresting him under an unconstitutional statute. He's alleging that they violated his rights by fabricating evidence that he possessed a rifle.

It was unlawful for police officers to fabricate evidence in 2009 (the year of Brisco's arrest). The prohibition against manufacturing phony evidence was widely known in 2009, just like it is today. Officers Stinar and Pierri are not entitled to qualified immunity.

## II.    Collateral Estoppel

Next, Defendants argue that collateral estoppel "bars Plaintiff from alleging that he did not possess the rifle on September 22, 2009, as this issue was litigated in his underlying criminal trial and again on appeal." *See* Defs.' Mtn. to Dismiss, at 7 (Dckt. No. 16).

Collateral estoppel, also known as issue preclusion, prevents a party from relitigating issues that have already been decided against them in another lawsuit. *See Aaron v. Mahl*, 550 F.3d 659, 665 (7th Cir. 2008); *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 356 (7th Cir. 2010) (citations omitted).

The issue at hand involves a prior state case (not a federal case), so Illinois law about collateral estoppel applies. *See Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir. 1987) (explaining that "federal courts should apply state collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state proceeding"). Under Illinois law, a party is barred from re-litigating an issue if:  (1) "the issue decided in the prior adjudication is identical with the one presented in the suit in question," (2) "there was a final judgment on the merits in the prior adjudication," and (3) "the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010) (citing *Herzog v. Lexington Township,* 167 Ill. 2d 288, 212 Ill. Dec. 581, 657 N.E.2d 926, 929–30 (1995)).

The disagreement between the parties in this case centers on the second prong of that test: whether there was a "final judgment on the merits in the prior adjudication." *Id*. Defendants argue that the guilty verdict for Unlawful Use *and* the vacated conviction for Aggravated Unlawful Use are final judgments for purposes of collateral estoppel. The Court will address each argument in turn.

### A.  The Conviction for Unlawful Use

Defendants argue that the lower court's finding that Brisco was guilty of two counts of Unlawful Use is a "final judgment on the merits" because "plaintiff's post-conviction petition never challenged his [Unlawful Use] conviction, nor did he contest the sufficiency of the evidence." *See* Defs.' Supplemental Brief, at 5 (Dckt. No. 32). Not so.

Collateral estoppel requires a final judgment on the merits. *See Brown*, 599 F.3d at 774. A finding or ruling is not a final judgment for purposes of collateral estoppel unless it is appealable. *See Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113, 102 Ill. Dec. 360, 499 N.E.2d 1373 (1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."). In other words, a party is not stuck with a finding that they did not have a full opportunity to challenge.

Brisco's Unlawful Use convictions were not final judgments because they were not appealable. In a criminal case, a judgment becomes appealable only when the defendant is sentenced. *See People v. Ross*, 2018 IL App (3d) 160478, at ¶ 8, 428 Ill. Dec. 503, 122 N.E.3d 764 (2018) ("The final judgment in a criminal case is the sentence, and, in the absence of the imposition of a sentence, an appeal cannot be entertained.") (quoting *People v. Caballero*, 102 Ill. 2d 23, 51, 79 Ill. Dec. 625, 464 N.E.2d 223 (1984)).

In this case, Brisco was found guilty of two counts of Unlawful Use. *See* Defs.' Mtn. to Dismiss, Ex. 2, at 2, 33 (Dckt. No. 16-2). But he was never sentenced for those two counts. *See Brisco*, 2012 IL App (1st) 101612, at ¶ 1. He was sentenced for only one count of Aggravated Unlawful Use. *Id.*

Without a sentence, there was no final judgment in the criminal case for Unlawful Use. And without a final judgment, there is no collateral estoppel.

This lack of preclusive effect was not inevitable. After Brisco's Aggravated Unlawful Use conviction was vacated, the state could have pursued a judgment on the Unlawful Use charges. *See* 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 3:8-20, 4:24 – 5:16 (Dckt. No. 16-3). If the state had secured a sentence on a count of Unlawful Use, that conviction would have become a final, appealable judgment. But the government elected not to do so.

In sum, the government did not secure a judgment on the Unlawful Use verdict, so that conviction cannot give rise to collateral estoppel.

### B.    The Conviction for Aggravated Unlawful Use

Next, Defendants argue that the lower court's finding that Brisco was guilty of one count of Aggravated Unlawful Use is a final judgment on the merits. *See* Defs.' Mtn. to Dismiss, at 9 (Dckt. No. 16). That, too, is incorrect.

Unlike the charge of Unlawful Use, Brisco was sentenced on one count of Aggravated Unlawful Use. So at one point, his conviction on that count was a final judgment with preclusive effect. *See* Cplt., at ¶ 21 (Dckt. No. 1); *Caballero*, 102 Ill. 2d at 51. However, his conviction was vacated when the trial court granted his petition for post-conviction relief on the grounds that the Aggravated Unlawful Use statute was unconstitutional. *See* 1/9/18 Hearing Tr., Defs.' Mtn. to Dismiss, Ex. 3, at 5:12-16 (Dckt. No. 16-3). Defendants argue that a conviction that is

vacated because of the unconstitutionality of the statute – not because of the merits – is still a final judgment with preclusive effect because "the factual findings of the [original] court [are not] otherwise overturned." *See* Defs.' Mtn. to Dismiss, at 9 (Dckt. No. 16).

The Illinois Supreme Court has apparently not addressed this issue. The parties, at least, have offered no such authority. As a result, this Court must predict how the Court would resolve it. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018).

To make that prediction, this Court may consider related prior rulings, the decisions of lower courts in the state, and "well-reasoned decisions" from other state and federal courts. *Id.* at 811–12. The Court concludes that the Illinois Supreme Court would likely find that Brisco's vacated criminal conviction has no preclusive effect, for two reasons.

First, when a conviction is vacated because the underlying statute is facially unconstitutional, "the conviction must be treated by the courts as if it did not exist, and it cannot be used for *any purpose under any circumstances*." *In re N.G.*, 2018 IL 121939, ¶ 36, 425 Ill. Dec. 547, 115 N.E.3d 102 (2018) (emphasis added). When a statute is declared unconstitutional, it means that courts "never acquired jurisdiction" over the defendant or the case. *Id.* at ¶¶ 36–40 ("[A] judicial determination that a law is facially invalid under the Constitution of the United States means, as a matter of federal constitutional law, that the state had no authority and the courts never acquired jurisdiction to impose punishment under that law.") (citing *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016); *Class v. United States*, 138 S. Ct. 798 (2018); *Ex parte Siebold*, 100 U.S. 371 (1879)). A conviction based on an unconstitutional law is "illegal" and "void." *In re N.G.*, 2018 IL 121939, at ¶ 38.

In *In re N.G.*, the Illinois Supreme Court held that a lower court could not rely on a conviction under the Aggravated Unlawful Use statute to deprive a person of parental rights,

because the statute was unconstitutional. The Supreme Court addressed whether the trial court could consider the conviction at all, not whether it had preclusive effect. Still, the result is the same. A void judgment carries no weight.

The Illinois Supreme Court did not expressly say that the phrase "any purpose" includes collateral estoppel. *Id.* But "any purpose" presumably means *any* purpose. *Id.* at ¶ 36. If the judgment "must be treated by the courts as if it did not exist," then it did not exist for collateral estoppel, either. *Id.* It would be strange if a non-existent judgment could be binding.

Second, Illinois appellate courts and federal appellate courts around the country recognize that a vacated judgment has no preclusive effect for purposes of collateral estoppel. "A vacated judgment is not a permissible basis for collateral estoppel." *Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005). "A vacated judgment has no collateral estoppel or res judicata effect under Illinois law (or any other law)." *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 340 (7th Cir. 1991) (citation omitted). "[I]t is well-established under Illinois law that when a judgment is vacated, it ceases to have any preclusive effect." *Hill v. City of Chicago*, 2009 WL 174994, at *12 (N.D. Ill. 2009) (St. Eve, J.) (citing cases); *see also United States v. Williams*, 904 F.2d 7, 8 (7th Cir. 1990) (holding that when a judgment is vacated "the effect is to nullify the judgment entirely and place the parties in the position of no trial having taken place at all"); *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 854–55 (7th Cir. 1974) (holding that a vacated judgment and the associated factual findings are "a nullity"); *United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 691 (D.C. Cir. 2013) ("A judgment vacated either by the trial court or on appeal has no estoppel effect in a subsequent proceeding."); *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) ("A judgment that has been vacated,

reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel. The same is true, of course, of a judgment vacated by a trial court."); *Stone v. Williams*, 970 F.2d 1043, 1054–55 (2d Cir. 1992) (citing Moore's Federal Practice for the proposition that "[a] judgment vacated or set aside has no preclusive effect"); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (holding that factual findings underlying plaintiff's criminal conviction for marijuana possession had no preclusive effect in his subsequent civil case, even though his conviction was vacated exclusively because the statute was unconstitutional); *Mills v. City of Covina*, 921 F.3d 1161, 1170 (9th Cir. 2019) (holding that "the jury's underlying factual determinations . . . were vacated with Mills's conviction" and thus had no preclusive effect in his subsequent civil case even though his conviction was overturned exclusively on constitutional grounds) (quotations omitted).

The Sixth Circuit explained the rationale for that rule in a similar case. *See Dodrill*, 764 F.2d at 444. If the parts of a judgment that weren't directly challenged on appeal retained their preclusive effect, then litigants would have an incentive to appeal every single issue rather than "expend their energies on their most compelling issues and arguments." *Id.* Appellants would be forced to write laundry-list briefs, and courts would be forced to write laundry-list opinions addressing every single argument. This rule – that a vacated judgment is vacated for every purpose – promotes efficiency and saves judicial resources.

Defendants make three arguments in support of their contention that the Illinois Supreme Court would find that Brisco's vacated conviction is a final judgment. *See* Defs.' Supplemental Brief, at 5 (Dckt. No. 32).

First, they argue that the Illinois Supreme Court holds that judgments under laws that have been repealed continue to have preclusive effect. *See id.* (citing *City of Des Plaines v.*

*Metro. Sanitary Dist.*, 59 Ill. 2d 29, 32, 319 N.E.2d 9 (1974) (finding a judgment under the former version of the Illinois State Constitution still had preclusive effect)). They predict that the Illinois Supreme Court would extend that holding, and find that judgments under unconstitutional laws retain their preclusive effect, too. *Id.* ("[A]lthough the Illinois Supreme Court held that portions of the AUUW statute were unconstitutional, the change in law does not preclude this court from applying the doctrine of collateral estoppel.").

This is unlikely. There is a big difference between declaring a law unconstitutional and repealing a law through the legislative process (or the amendment process for a constitutional provision). When a law is declared unconstitutional, it is unconstitutional from the moment that it passed. *In re N.G.*, 2018 IL 121939, at ¶ 36. It is invalid from day one. A verdict based on an unconstitutional law had no power on the moment of entry. So the judgment must be treated as if it "did not exist," and cannot have preclusive effect. *Id.* When a law is repealed, on the other hand, there are no backward-looking effects. Repealing a law prospectively has no impact on cases already decided.

Second, Defendants offer case law for the notion that a judgment entered before a change in the case law can still have a limited preclusive effect. *See* Defs.' Supplemental Brief (Dckt. No. 41) (citing *Bontkowski v. United States*, 28 F.3d 36 (7th Cir. 1994) and *Lipscomb v. United States*, 2016 WL 853876 (W.D.N.C. 2016)). But this analogy poses the same issue. When the case law changes, it doesn't mean that all courts that heard cases under the old standard lacked jurisdiction.

Finally, Defendants argue that Brisco's conviction was a final judgment because it was vacated by collateral attack rather than by direct appeal. *See* Defs.' Supplemental Brief, at 5 (Dckt. No. 32).

Defendants cite only one case, and it is not on point. *See Talarico v. Dunlap*, 177 Ill. 2d 185, 226 Ill. Dec. 222, 685 N.E.2d 325 (1997). The Illinois Supreme Court in *Talarico* did hold that a defendant was estopped from re-litigating issues addressed in a prior criminal case. *Id.* at 190. But the case involved a pardon. *Id.* As the court explained, when a defendant is pardoned, "[the] pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof." *Id.* Therefore, a pardoned conviction continues to have preclusive effect. In stark contrast, when a conviction has been vacated due to an unconstitutional statute, as Brisco's was, it "must be treated by the courts as if it did not exist, and it cannot be used for *any purpose under any circumstances*." *In re N.G.*, 2018 IL 121939, at ¶ 36 (emphasis added).

In sum, the Court holds that the Illinois Supreme Court likely would conclude that a vacated conviction cannot provide the basis for collateral estoppel.

## III. Plausibility

Finally, Defendants argue that Brisco's complaint is not plausible. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

A court must dismiss a claim if it is not "facially plausible." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is, the plaintiff "must present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

A plaintiff must allege facts that are not only "consistent with" a claim to relief, but "plausibly suggest" one. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) (citing *Twombly*, 550 U.S. at 557). That is, if the factual allegations in the complaint don't explicitly describe unlawful behavior, and there is an "obvious [lawful] alternative explanation"

17

for them, then "the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *Id.*

Defendants make two arguments. First, they argue that the complaint is not plausible in light of the factual findings made by the criminal court. *See* Defs.' Mtn. to Dismiss, at 4–6 (Dckt. No. 16). But the judgment was vacated, so there are no factual findings.

Next, Defendants argue that Brisco's complaint is not plausible because it doesn't allege any facts that (1) "permit the reasonable inference that Plaintiff was not the perpetrator," or (2) "the officers had reason to know that Plaintiff was not the perpetrator." *Id.* at 7.

Brisco's complaint easily clears the plausibility hurdle. He alleges that the police arrested him for no reason and fabricated evidence against him. That story may or may not be true – that's for a jury to decide. But there's nothing inherently implausible about it.

### Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss.


Date:   November 30, 2020

_____
Steven C. Seeger
United States District Judge